# SETTLEMENT AND
# GENERAL MUTUAL RELEASE AGREEMENT

This Settlement and General Mutual Release Agreement, dated June 7, 2013, is entered into according to the following terms and conditions, by and between Jason Nieman ("Nieman"), on the one hand, and Rick Dikeman ("Dikeman"), American Specialty Insurance & Risk Services, Inc. ("American Specialty"), and Brown & Brown, Inc. ("Brown & Brown"), on the other (Nieman, Dikeman, American Specialty, and Brown & Brown, collectively, the "Parties").

## Definitions and Recitals

A.  As used herein, "Agreement" means this Settlement and General Mutual Release Agreement.

B.  As used herein, "Nieman" means Plaintiff Jason Nieman, along with his present, past, and future attorneys, insurers, representatives, agents, successors, assigns, and family members.

C.  As used herein, "Dikeman" means Defendant Rick Dikeman, along with his present, past, and future attorneys, insurers, representatives, agents, successors, assigns, and family members.

D.  As used herein, "American Specialty" means Defendant American Specialty, along with its present, past, and future parent companies, subsidiaries, divisions, affiliates, and related entities, as well as each of the present, past, and future officers, directors, employees, shareholders, attorneys, insurers, representatives, agents, successors, assigns, and family members of the foregoing.

E.  As used herein, "Brown & Brown" means non-party Brown & Brown, American Specialty's parent company, along with its present, past, and future parent companies, subsidiaries, divisions, affiliates, and related entities, as well as each of the present, past, and future officers, directors, employees, shareholders, attorneys, insurers, representatives, agents, successors, assigns, and family members of the foregoing.

F.  As used herein, "Party" or "Parties" means, as appropriate, Nieman, Dikeman, American Specialty, and Brown & Brown, individually or collectively.

G.  As used herein, the "Lawsuit" means the lawsuit entitled *Nieman v. RLI Corp., et al.*, where Nieman asserted, among other things, claims against Dikeman and American Specialty for defamation, violation of the Illinois Human Rights Act, and violations of 42 U.S.C. 2000e *et seq.*, and 42 U.S.C. § 1981.

H.  The "Appeal" refers to *Nieman v. Insurance Search Group, et al*, pending in the United States Court of Appeals for the Seventh Circuit, Appeal No. 13-1739, where Nieman seeks reversal of, among other things, the order dismissing all claims against Dikeman

and American Specialty, as well as of the order granting sanctions against Nieman, and in favor of Dikeman and American Specialty, in the amount of $22,500.

I.    In order to avoid the expense and uncertainty of the Appeal and further litigation, the Parties desire to resolve the Lawsuit and Appeal, along with all other disputes and potential disputes between them, including any claims, defenses, and counterclaims that were or could have been asserted in the Lawsuit by either party against the other, in accordance with this Agreement's terms and, except as set forth below, without any admission of liability or wrongdoing by either Party.

## Agreements

In consideration of the foregoing recitals and the mutual covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.    **No Admission of Liability.**  Except as set forth below with respect to Nieman's acknowledgement in Paragraph 5 regarding the extent to which he could have obtained leave to file this action had he sought it, nothing in this Agreement, nor any statements or communications made by the Parties or their respective agents during the negotiations leading to this Agreement, shall be considered admissions of liability by or on behalf of any Party.

2.    **Release of Claims.**

2.1.    Except as set forth below, subject to (1) receipt in full of the Settlement Payment, (2) dismissal of the Appeal as to Dikeman and American Specialty, and (3) Nieman's cooperation in presenting the Stipulated Injunction (as defined below) to the court, Dikeman, American Specialty, and Brown & Brown, on behalf of themselves, individually and collectively, and on behalf of, as applicable, all of their present, past, and future parent companies, subsidiaries, divisions, affiliates, and related entities, as well as each of the present, past, and future officers, directors, employees, shareholders, attorneys, insurers, representatives, agents, successors, assigns, and family members of the foregoing (the "Defendant Releasing Parties"), release and forever discharge Nieman, along with his present, past, and future attorneys, insurers, representatives, agents, successors, assigns, and family members, including, by way of example but not limitation, Erie Insurance Exchange (collectively, the "Nieman Released Parties"), from any and all suits, causes of action, claims, charges, complaints, demands, obligations, liabilities, costs, damages (including punitive damages), injuries, rights, judgments, attorneys' fees, expenses, penalties, fines, and any other causes of action of whatever nature, whether known or unknown, whether suspected or unsuspected, whether discovered now or hereafter, that arose at any time from the beginning of time to the date of this Agreement, which the Defendant Releasing Parties asserted or could have asserted in the Lawsuit or in connection with the Appeal, including, by way of example but not limitation, claims for defamation, libel, slander, or malicious prosecution. The Defendant Releasing Parties' specific reference to claims for defamation, libel, slander, or malicious prosecution shall not be taken as an acknowledgement that any such actions occurred in the Litigation, beyond what is reflected in the public court file, nor shall it be construed as an attempt to assist with, or cooperate in,

Nieman's efforts to obtain insurance coverage for his liabilities in the Litigation. The Defendant Releasing Parties take no position with respect to such efforts.

   2.2.  Nieman, on behalf of himself and his present, past, and future attorneys, insurers, representatives, agents, successors, assigns, and family members (collectively, the "Nieman Releasing Parties"), releases and forever discharges, individually and collectively, Dikeman, American Specialty, and Brown & Brown, along with, as applicable, all of their present, past, and future parent companies, subsidiaries, divisions, affiliates, and related entities, as well as the present, past, and future officers, directors, employees, shareholders, attorneys, insurers, representatives, agents, successors, assigns, and family members of the foregoing (the "Defendant Released Parties"), from any and all suits, causes of action, claims, charges, complaints, demands, obligations, liabilities, costs, damages (including punitive damages), injuries, rights, judgments, attorneys' fees, expenses, penalties, fines, and any other causes of action of whatever nature, whether known or unknown, whether suspected or unsuspected, whether discovered now or hereafter, that arose at any time from the beginning of time to the date of this Agreement, which Nieman asserted or could have asserted in the Lawsuit or in connection with the Appeal, including, by way of example but not limitation, all claims related to, arising from, or in any way connected with, Nieman's efforts to obtain employment with RLI Corp. and the litigation that followed, as well as all charges that Nieman brought before the Equal Employment Opportunity Commission (EEOC) and/or Illinois Department of Human Rights (IDHR) against Dikeman, American Specialty, or Brown & Brown, including Agency Charge Nos. 440-2013-01954 and 440-2013-01955.

  3.  **Settlement Payment and Satisfaction of Judgment.** Within ten (10) business days of the effective date of this Agreement, Nieman shall cause a certified check in the amount of $10,000 (Ten Thousand USD) payable to American Specialty Insurance & Risk Services, Inc., to be sent to the attention of Matthew Kramer c/o Freeborn & Peters LLP, 311 South Wacker Drive, Suite 3000, Chicago, Illinois 60606. Nieman shall provide confirmation that the check has been placed for delivery, as well as provide a tracking number. Upon receipt of the check, counsel for Dikeman and American Specialty shall file paperwork with the Central District of Illinois indicating that the judgment in their favor has been satisfied.

  4.  **Covenant Against Future Contact And Applications For Employment.**

   4.1  Neiman hereby covenants that, except as set forth herein, he will have no further contact of any kind with Dikeman, American Specialty, or Brown & Brown, including, as applicable, all of their present, past, and future parent companies, subsidiaries, divisions, affiliates, and related entities, as well as each of the present, past, and future officers, directors, employees, shareholders, attorneys, insurers, representatives, agents, successors, assigns, and family members of the foregoing. "Contact" for purposes of this Paragraph 4.1 shall include all direct or indirect personal (face to face) interactions, irrespective of whether other parties are present, as well as all forms of direct or indirect written or oral communication, on any subject or for any purpose, including telephone calls, e-mail communications, communications over any form of social media (LinkedIn, Facebook, Twitter, etc.), letters, and memoranda.

4.2    Nieman specifically acknowledges that, consistent with the prohibition against future contact set forth in Paragraph 4.1, he shall not inquire about, or apply for, any position of employment with American Specialty, Brown & Brown, or any Brown & Brown subsidiary.  This prohibition shall apply to positions that are actually posted or advertised, as well as any unsolicited efforts on Nieman's part to apply for a position in the absence of a posting, and, to the extent a position is posted or advertised, this prohibition shall apply regardless of whether the position is posted directly by the company or through a third party, such as a recruiter.  Nieman further specifically acknowledges that the list of Brown & Brown subsidiaries will change over the term of this agreed prohibition (that is, the rest of Mr. Nieman's life), and that the prohibition against future contact and applications for employment shall extend to any entity that is not presently affiliated with Brown & Brown but with which Brown & Brown becomes affiliated in the future.  The list of Brown & Brown subsidiaries is available on Brown & Brown's website (www.bbinsurance.com), and the burden of determining whether an entity with which Nieman might attempt to obtain employment is a Brown & Brown subsidiary shall be on Nieman.

4.3    As to the prohibition against future contact set forth in Paragraph 4.1, Nieman specifically represents and acknowledges that these restrictions are reasonable, and that his agreement to be bound by them is given freely and in the absence of duress or coercion.  He further acknowledges that, but for his short association with Dikeman as a co-worker several years ago, he has never had any interaction with Dikeman, American Specialty, Brown & Brown, or any Brown & Brown subsidiary, outside of the context of this litigation, and neither his health, welfare, nor livelihood are in any way dependent on, or impacted by, the minimal interaction he has had with these parties in connection with this litigation.  He will therefore suffer no harm or prejudice of any kind as a result of the prohibitions, and has made an informed decision to agree to those prohibitions as consideration for resolving his dispute with the Defendant Releasing Parties.

4.4    As to the prohibition against applying for employment with American Specialty, Brown & Brown, or any Brown & Brown subsidiary set forth in Paragraph 4.2, Nieman specifically represents and acknowledges that this restriction is reasonable, and that his agreement to be bound by it is given freely and in the absence of duress or coercion.  He specifically acknowledges that, based on his interactions with the parties and counsel in the litigation (but not the act of filing the litigation itself), including, by way of example, a demeanor which Nieman acknowledges that the Defendant Releasing Parties perceived to be hostile, combative, and not suitable for the workplace, American Specialty, Brown & Brown, and all Brown & Brown subsidiaries would have reasonable, non-discriminatory, and non-retaliatory reasons for wishing to reject any application for employment that Nieman might attempt to submit.  Moreover, Nieman acknowledges that the very act of applying for a position in violation of the agreed restriction set forth in Paragraph 4.2 would display a lack of discretion and good judgment, and would itself be a reasonable, non-discriminatory, and non-retaliatory basis for rejecting any application for employment that Nieman might attempt to submit.  Nieman understands and agrees that, should he apply for a position with American Specialty, Brown & Brown, or any Brown & Brown subsidiary, it will be rejected for any one of these reasonable, non-discriminatory, and non-retaliatory reasons, and not for any reason that might otherwise give rise to a claim of employment discrimination, including his age, race, gender, or status as a party

that has filed one or more lawsuits to address what he claimed was discrimination or retaliation on the part of his employer.

5.    **Prohibitions Regarding Future Litigation and Related Proceedings.**

5.1    Nieman agrees that, if the prohibition against future contact in Paragraph 4.1 is followed, he should have no basis to ever bring any legal proceeding against any of the Defendant Releasing Parties. Notwithstanding that expectation, however, it is the Parties' intention that Nieman not be permitted to file, in any state or federal court or administrative agency, any lawsuit, claim, petition, proceeding, charge, or cause of action against any of the Defendant Releasing Parties without first seeking leave of court from the United States District Court for the Central District of Illinois. It is the Parties' intention that Nieman not receive leave to bring any such proceeding unless he is able to show, by appropriate and specific evidence, that any claims that he intends to pursue are warranted by existing law, or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law, and that his allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery. For purposes of illustration, Nieman acknowledges that, had he sought leave of court to bring the claims asserted against Dikeman and American Specialty in this action, he would have lacked a sufficient evidentiary and legal basis to do so. The Parties acknowledge this standard is modeled after the injunction imposed against a pro se plaintiff in *Portman v. Andrews*, 249 F.R.D. 279 (N.D. Ill. 2007). As set forth below in Paragraph 6, Nieman agrees that he shall stipulate to, and cooperate in Defendants efforts' to obtain entry of, an injunction against further litigation against any of the Defendant Releasing Parties absent leave of court, as informed by the standards described herein.

6.    **Stipulated Injunction.**

Nieman agrees that he shall stipulate to, and cooperate in Defendants' efforts to obtain entry of, an injunction before the United States District Court for the Central District of Illinois, in Case No. 12-cv-1012, specifically prohibiting the conduct described in Paragraphs 4 and 5 above (that is, the prohibition against further contact; against pursuing employment with American Specialty, Brown & Brown, or any Brown & Brown subsidiary; and against future legal proceedings absent leave of court) (the "Stipulated Injunction"). Nieman acknowledges that the purpose of the injunction shall be to further ensure compliance with the agreed-to prohibitions, and that, should the Court decline to enter the injunction, in whole or in part, the prohibitions set forth in Paragraphs 4 and 5 shall nonetheless remain in effect. A copy of the injunction is attached hereto as Exhibit A and incorporated herein by reference.

7.    **Dismissal of the Seventh Circuit Appeal.**

Within three (3) business days of counsel's receipt of the certified check described in Paragraph 3, Nieman shall take all steps necessary to dismiss, with prejudice, the Appeal as to Dikeman and American Specialty. Dikeman and American Specialty agree to cooperate with Nieman in that regard to whatever extent necessary to obtain dismissal of the Appeal.

8.     **Disclosure of Pending Claims, Actions, Causes of Action, or Proceedings, and Agreement to Ensure Dismissal.**

Nieman represents that, as of this Agreement's effective date, he has disclosed to the Defendant Releasing Parties all pending claims, actions, charges, causes of action, or proceedings that he has initiated against them, including Agency Charge Nos. 440-2013-01954 and 440-2013-01955, field before the Equal Employment Opportunity Commission (EEOC), as well as any other action initiated with the EEOC or Illinois Department of Human Rights (IDHR).   Nieman further represents that he has disclosed any disciplinary actions or other grievances that he has initiated against Dikeman and American Specialty's counsel.

Nieman agrees that, in connection with the release set forth in Paragraph 2.2, he will take all steps necessary to ensure the prompt and final dismissal of any such claims, actions, causes of action, and proceedings.   To the extent any such claims, actions, causes of action, and proceedings have progressed to a point where Nieman nominally acquired the right to sue any of the parties against which such actions were initiated, Nieman reaffirms that he will not bring any such lawsuits, and that all claims that he might believe to support or give rise to such actions are being released as set forth in Paragraph 2.2.

9.     **Non-Disparagement.**

Nieman agrees not to make statements or take any actions, from the date of this Agreement forward, which (i) could in any way disparage the Defendant Releasing Parties, (ii) could foreseeably harm the reputation and/or goodwill of the Defendant Releasing Parties, or (iii) could in any way, directly or indirectly, cause, encourage, or condone the making of such statements or the taking of such actions by anyone else.

10.     **Liquidated Damages.**

Nieman acknowledges that his breach of this Agreement in any respect will cause harm that is unreasonably difficult to quantify, and he therefore agrees to pay liquidated damages in the amount of fifty-thousand dollars ($50,000) for each instance of breach of this agreement. Nieman expressly acknowledges that these liquidated damages are a fair and reasonable approximation of the harm that his breach is likely to cause, and that they are not punitive in nature or imposed solely for the purpose of ensuring compliance with the Agreement.

11.     **Representations and Warranties.**

11.1.    The Defendant Releasing Parties represent and warrant that they are the sole owners of the claims, causes of action, and other matters released in Paragraph 2.1.

11.2.    Nieman represents and warrants that he is the sole owner of the claims, causes of action, and other matters released in Paragraph 2.2.

11.3.   Each Party represents and warrants that it is empowered to enter into this Agreement, and to execute any document contemplated by this Agreement, and that no further approval is required after execution.

11.4.   Each Party represents and warrants that the execution, delivery, and performance of this Agreement, or any document contemplated by this Agreement, will not violate or constitute a breach or default in: (i) any provision of any contract, agreement, grant, or other instrument or document to which it is a party or by which it is bound; or (ii) any applicable judgment, order, writ, injunction, decree, law, rule, or regulation.

11.5.   Each Party represents and warrants that it: (i) had the opportunity to seek the advice of legal counsel before entering into this Agreement, and that, in Nieman's case, he was specifically advised to do so; (ii) read this Agreement in its entirety; (iii) is fully informed and understands the terms of this Agreement; (iv) has been given reasonable time to consider whether to execute this Agreement; (v) is knowingly and voluntarily entering into this Agreement and agrees to comply with its terms and conditions; and (vi) is not acting under duress, including economic duress, in executing this Agreement.

11.6.   The representations and warranties made by Nieman shall be deemed material to the Defendant Releasing Parties' individual and collective rights and obligations under this Agreement.  Similarly, the representations and warranties made individually and collectively by the Defendant Releasing Parties shall be deemed material to Nieman's rights and obligations under this Agreement.

12.   **Attorneys' Fees and Costs.**  The Parties shall separately bear their own respective attorneys' fees and costs arising from the Lawsuit and the negotiation and drafting of this Agreement.  In the event of any suit to enforce the terms of this Agreement, including any attempt by Nieman to seek leave of court to bring a lawsuit against any of the Defendant Releasing Parties as described in Paragraph 5, the prevailing party shall be entitled to recover, in addition to any other remedy obtained, (a) all attorneys' fees incurred in the proceeding, including, to the extent applicable, fees incurred in the investigation and preparation of issues for trial and in the trial and appellate proceedings, and (b) all costs and expenses incurred in connection with the proceeding, including, to the extent applicable, costs and expenses incurred in the investigation and litigation, including expert witness fees, deposition costs (appearance fees and transcript charges), injunction-bond premiums, travel and lodging expenses, arbitration fees and charges, and all other reasonable costs and expenses.

13.   **Joint Drafting.**  In interpreting this Agreement, the Parties expressly agree that this Agreement was prepared by the Parties jointly, and that no ambiguity shall be resolved against any Party on the basis that it was responsible or primarily responsible for having drafted this Agreement.

14.   **Entire Agreement.**  This Agreement represents the entire agreement between the Parties with respect to the subject matter hereof, and it supersedes any prior understanding with respect to the subject matter hereof.

15. **Waiver and Amendment in Writing.** This Agreement may be amended only by written agreement signed by all Parties, and no waiver or modification is intended or shall be implied from any conduct during the life of the Agreement.

16. **Governing Law.** This Agreement shall be governed by and construed under the laws of the State of Illinois, without regard to conflict-of-laws rules or principles.

17. **Section Headings.** The section headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

18. **Severability.** In the event that any provision of this Agreement shall for any reason be held illegal, invalid, or unenforceable, the illegal, invalid, or unenforceable provision shall not affect the remaining provisions, but shall be fully severable, and the Agreement shall be construed and enforced as if the illegal, invalid, or unenforceable provision had never been inserted herein.

19. **Successors.** This Agreement shall be binding upon and inure to the benefit of the Parties' respective representatives, administrators, successors, and assigns.

20. **Counterparts and PDF Signatures.** The Parties may execute this Agreement in counterparts, and, if so executed, each counterpart shall have the full force and effect of an original, and all counterparts, when taken together, shall constitute a single document. Signatures in PDF format shall be treated for all purposes as original signatures.

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**

**SIGNATURE PAGES TO FOLLOW**

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the day and year first written above.

### JASON NIEMAN:

**Jason Nieman,**
an individual

By: _____

Name: _____

### AMERICAN SPECIALTY INSURANCE AND RISK SERVICES, INC.:

**American Specialty Insurance and Risk Services, Inc.,**
an Indiana corporation

By: _____

Name: _____

Its: _____

### RICKY "RICK" DIKEMAN:

**Rick Dikeman,**
an individual

By: _____

Name: _____

Its: _____

### BROWN & BROWN, INC.:

**Brown & Brown, Inc.,**
a Florida corporation

By: _____

Name: _____

Its: _____

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the day and year first written above.

<u>JASON NIEMAN:</u>

**Jason Nieman,**
an individual

By: _____

Name: _____

<u>AMERICAN SPECIALTY INSURANCE AND RISK SERVICES, INC.:</u>

**American Specialty Insurance and Risk Services, Inc.,**
an Indiana corporation

By: _____

Name: _Mark F King_____

Its: _Chief Litigation Counsel_____

<u>RICKY "RICK" DIKEMAN:</u>

**Rick Dikeman,**
an individual

By: _____

Name: _____

Its: _____

<u>BROWN & BROWN, INC.:</u>

**Brown & Brown, Inc.,**
a Florida corporation

By: _____

Name: _Mark E King_____

Its: _Chief Litigation Counsel_____

Page 9 of 9

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the day and year first written above.

### JASON NIEMAN:

**Jason Nieman,**
an individual

By: _____

Name: _____

### AMERICAN SPECIALTY INSURANCE AND RISK SERVICES, INC.:

**American Specialty Insurance and Risk Services, Inc.,**
an Indiana corporation

By: _____

Name: _____

Its: _____

### RICKY "RICK" DIKEMAN:

**Rick Dikeman,**
an individual

By: _Rick Dikeman_____

Name: _____

Its: _____

### BROWN & BROWN, INC.:

**Brown & Brown, Inc.,**
a Florida corporation

By: _____

Name: _____

Its: _____